USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/16/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VINOD GOVINDHARAJAN, individually and behalf of others similarly situated,

　　　　　　　　　　　　Plaintiff,

　　　　-against-

TATA CONSULTANCY SERVICES, LTD. and RAJESH GOPINATHAN,

　　　　　　　　　　　　Defendants.

19-CV-10017 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

　　Plaintiff Vinod Govindharajan brings this putative class action against Defendants Tata Consultancy Services, Ltd. ("TCS") and Rajesh Gopinathan, asserting six claims for equal pay violations and retaliation in violation of the New Jersey Conscientious Employee Protection Act ("NJ CEPA"), N.J. Stat. Ann. § 34:19-1 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d); and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq.*; as well as one claim for visa fraud in violation of 18 U.S.C. § 1546.  Before the Court is Defendants' motion to (1) compel arbitration on Plaintiff's equal pay and retaliation claims and either stay or dismiss such claims, and (2) dismiss Plaintiff's visa fraud claim.  For the reasons that follow, Defendants' motion to compel arbitration and dismiss the visa fraud claim is granted.  Plaintiff shall notify the Court within 10 days if he seeks a stay of this action pending the conclusion of arbitration on his remaining claims.

## FACTUAL BACKGROUND[1]

Plaintiff began his employment with TCS on September 2, 2010 as a Consultant-Business Development Manager in Chennai, India. Complaint, Dkt. 2 ¶ 14. On December 20, 2013, Plaintiff began an assignment for TCS as a Business Development Manager in New York and New Jersey. *Id.* ¶ 15. Prior to relocating to the United States, on December 11, 2013, Plaintiff signed a "Deputation Agreement." *See* Seetharaman Decl., Dkt. 11-1, Ex. A (hereinafter "Deputation Agreement") at 10. The signature page states, "I HAVE READ THE FOREGOING DEPUTATION AGREEMENT. I UNDERSTAND IT. I HAVE HAD THE OPPORTUNITY TO REVIEW IT, TO ASK TCS QUESTIONS ABOUT IT AND TO CONSULT AN ATTORNEY ABOUT IT. I SIGN IT KNOWINGLY, WILLINGLY, VOLUNTARILY AND WITHOUT ANY DURESS." *Id*. The Agreement contains a provision entitled "Dispute Resolution" (hereinafter "Dispute Resolution clause"), which provides, in relevant part:

> **9.   Dispute Resolution.**
>
> 9.1   All controversies or claims arising out of or relating to the deputation, compensation including its validity or breach of its terms shall be submitted to binding arbitration under the Arbitration and Conciliation Act 1996 and any subsequent related amendments there to, unless settled amicably between TCS and Associate; and such arbitration shall be conducted in accordance with the rules of arbitration of the Nani Palkivala Arbitration Centre ("NPAC"), which rules, as modified from time to time, are deemed to be incorporated by reference into this clause (the"Arbitration Rules") by an arbitration panel comprising of a sole arbitrator. The arbitration panel as referred to above shall be appointed by the NPAC. The arbitration panel shall deliver the award in the arbitration proceedings within three (3) months from reference of any dispute to arbitration. The venue of arbitration shall be Chennai, India.

---

[1] These facts are drawn from the Complaint, Plaintiff's supporting declaration, and Defendants' supporting declarations and exhibits. "'In the context of motions to compel arbitration brought under the [FAA] . . . the court applies a standard similar to that applicable for a motion for summary judgment,' and courts may therefore consider materials outside the complaint." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).

> 9.2    The award passed by the arbitration panel shall be final and binding upon the Parties, and that the Parties shall not be entitled to commence or maintain any action in any Court of Law in respect of any matter in dispute arising from or in relation to the Agreement, except for the enforcement of an arbitral award passed by an arbitration panel pursuant to this clause.

Deputation Agreement § 9. A "Governing Law" provision in the Agreement specifies that "[t]he Parties agree that this Agreement shall be governed by the laws of the Republic of India[.]". *Id.* § 11.

Beginning in 2014, Plaintiff raised concerns within TCS that his salary was lower than that of his United States-based coworkers.[2] *See* Compl. ¶¶ 16–17, 22; Govindharajan Decl., Dkt. 16-1 ¶¶ 15–16. He alleges that he subsequently discovered that TCS had mischaracterized his employment position on his L-1A visa application. Govindharajan Decl. ¶ 16. As Plaintiff continued to raise concerns about his salary and visa, he contends that TCS took retaliatory actions against him by demoting him and making his Green Card sponsorship contingent on his promise not to file complaints with the Equal Employment Opportunity Commission (EEOC) and U.S. Citizenship and Immigration Services (USCIS).[3] *See* Compl. ¶¶ 24, 38; Govindharajan Decl. ¶ 23. Plaintiff initiated complaints with the EEOC and USCIS on November 2, 2018 and December 5, 2018, respectively. Compl. ¶ 42; Govindharajan Decl. ¶¶ 26–27. On January 2, 2019, Plaintiff alleges that TCS withdrew Plaintiff's visa extension petition. Compl. ¶ 44. Plaintiff and his family returned to India on February 9, 2019. Compl. ¶ 48; Govindharajan Decl. ¶ 30. According to Plaintiff, Defendants have refused to pay him his full salary, and have initiated legal action against him in India. Govindharajan Decl. ¶¶ 33–34.

---

[2] Plaintiff's Complaint states that Plaintiff first raised salary concerns on April 25, 2014, Compl. ¶ 16, but his declaration provides that he first contacted human resources about those concerns on March 10, 2014, Govindharajan Decl. ¶ 15.

[3] Plaintiff asserts that he sent over 25 emails and had over 30 conversations with Defendants regarding his concerns between April 11, 2014 and November 9, 2016. Govindharajan Decl. ¶ 20.

**PROCEDURAL HISTORY**

Plaintiff filed a charge of discrimination with the EEOC on November 2, 2018 and a whistleblower complaint with the USCIS on December 5, 2018. Compl. ¶ 42; Govindharajan Decl. ¶ 27. On July 29, 2019, the EEOC issued a final determination finding reasonable cause to believe that Defendants discriminated against Plaintiff on the basis of his national origin and retaliated against Plaintiff for filing his complaint. Dkt. 18-1, Ex. 3. The EEOC proposed conciliation discussions, *id*., but Plaintiff alleges that Defendants rejected the conciliation offer, Compl. ¶ 4. The EEOC issued a right to sue letter to Plaintiff on August 23, 2019. Dkt. 18-1, Ex. 3.

Plaintiff filed his *pro se* complaint on October 29, 2019. Compl. The Court granted Plaintiff's counsel's application to appear *pro hac vice* on November 20, 2019. Dkt. 6. Defendants filed the motion to compel arbitration and dismiss now before the Court on December 23, 2019. Dkt. 10. Plaintiff filed a memorandum in opposition to Defendants' motion on February 3, 2020, Pl.'s Opp'n, Dkt. 16, to which Defendants replied on February 17, Defendants' Reply, Dkt. 23.

**LEGAL STANDARD**

**I.     The Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") provides, in relevant part, that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enacted to "revers[e] centuries of judicial hostility to arbitration agreements," *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119 (2d Cir. 1991) (citation omitted), the FAA "embodies the national policy favoring arbitration and places

arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted).

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia*, 834 F.3d at 229 (citation omitted). A court must therefore "consider all relevant, admissible evidence submitted by the parties and contained in pleadings" and "draw all reasonable inferences in favor of the non-moving party." *Id*. (citation omitted).[4]

## II.   The Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*,

---

[4] "[A] court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (*per curiam*) (citation and alteration omitted). Although Plaintiff filed his complaint *pro se*, he was represented by counsel within a month of filing the complaint. *See* Compl.; Dkt. 6. The Court does not apply the more deferential standard for *pro se* litigants here in light of the fact that Plaintiff had already retained counsel before Defendants filed the motion now before the Court.

562 U.S. 521, 529–30 (2011) (citation omitted).  In answering this question, the Court must "accept[ ] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'"  *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

## DISCUSSION

**I.**      **The Motion to Compel Arbitration**

"Under the FAA, the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation omitted).  "The party moving to compel arbitration 'must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue.'" *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)).  This does not require the movant to show the "agreement would be *enforceable*, merely that one existed." *Id.*  If this showing is made, "the party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010)). This may be accomplished using "generally applicable contract defenses, such as fraud, duress, or unconscionability[.]" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Nunez v. Citibank, N.A.*, No. 08 CV. 5398 (BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009).

**A.     A Valid Arbitration Agreement Covers Plaintiff's NJ CEPA, Title VII, EPA and NJLAD Claims**

The Court must first determine "whether a valid agreement or obligation to arbitrate exists[.]". *LAIF X SPRL*, 390 F.3d at 198.  Defendants have met their initial burden of proving that an agreement to arbitrate exists because Plaintiff signed the Deputation Agreement, including the Dispute Resolution clause.  Defendants' Motion, Dkt. 13 at 6–7; Deputation Agreement.  Plaintiff does not contest the existence of an arbitration clause in the Deputation Agreement or the fact that Plaintiff signed the Agreement.  *See* Opp'n at 12; Govindharajan Decl. ¶ 13.  Instead, Plaintiff raises several arguments as to why the Dispute Resolution clause is invalid and the Court should not compel arbitration.  The Court addresses these arguments in turn, but ultimately concludes that none are persuasive.

**1.     Ambiguity**

Plaintiff first argues that the terms of the Dispute Resolution clause are ambiguous and do not demonstrate an intent to have all of Plaintiff's claims submitted to arbitration.  Opp'n at 11.  Specifically, Plaintiff argues that the Dispute Resolution clause only extends to a subset of claims related to his "deputation" and "compensation," rather than all claims related to his "employment" with TCS.  Plaintiff relies on the definition of "Deputation" in Section 2 of the Deputation Agreement, which provides: "'Deputation' means the overseas travel by Employee to perform project work or other designated functions in the United States in connection with the business of TCS or its affiliates, when, such travel is for a period of time described in TCS Policy as long term travel."  Deputation Agreement § 2.  Based on this definition, Plaintiff argues that "the term 'Deputation' is only defined as 'oversea travel,'" and does not extend to all employment-related controversies, "especially" his retaliation claims under the NJ CEPA and

7

Title VII.  Opp'n at 12.  Plaintiff does not appear to dispute that his equal pay violation claims under Title VII, the EPA and the NJLAD fall under the term "compensation."  *See id.* at 12–13.

The Court finds unpersuasive Plaintiff's contention that the term "deputation," as defined in Section 2 of the Agreement, excludes the alleged retaliation that occurred in the course of his deputation in the United States.  Plaintiff's argument that "'Deputation' is only defined as 'oversea travel,'" *id.* at 12, rests on far too narrow a construction of the Agreement, *see Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (stating that courts engaging in contract interpretation should "ensure that undue emphasis is not placed upon particular words and phrases[.]" (internal citation omitted)).  Pursuant to the agreement, the word "deputation" encompasses travel "to perform project work or other designated functions in the United States in connection with the business of TCS or its affiliates, when, such travel is for a period of time described in TCS Policy as long term travel."  Deputation Agreement at § 2.  The definition of "deputation" thus encompasses travel for all business-related functions when the travel is for a long period.  Although neither Plaintiff nor Defendants point to any TCS Policy defining long term travel, this Court infers based on the plain meaning of "long term" that Plaintiff's six years in the United States would constitute "long term travel."  *See id.*; *see also Law Debenture Tr.,* 595 F.3d at 467 ("[A] written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms[.]") Furthermore, neither Plaintiff nor Defendants dispute that Plaintiff was engaged in "project work or other designated functions" for TCS during his time in the United States.  The Court thus interprets "deputation" within the Dispute Resolution clause to refer to Plaintiff's employment in the United States.  Moreover, as described above, the Dispute Resolution clause covers "*[a]ll controversies or claims arising out of or relating to the deputation, compensation[.]*".  Deputation

Agreement § 9.1 (emphasis added). Accordingly, alleged retaliation that occurred in the course of Plaintiff's deputation constitutes a controversy that "ar[ose] out of or relat[es] to the deputation."

The Deputation Agreement further defines "Compensation" as "the salary, allowance and other earnings which the Employee is eligible to receive from TCS during the Deputation Term." *Id.* § 2. The "Deputation Term" is "the period commencing on the day the Employee actually travels to the United States upon commencement of his Deputation and ending on the day designated to the Employee in writing by TCS as the day for his return from the United States upon termination or expiration the Deputation." *Id.* Both parties agree that Plaintiff traveled to the United States to commence his Deputation in December 2013, and that Plaintiff left the United States in February 2019, *see* Compl. ¶¶ 15, 48; Mot. at 2–3, when "TCS released Plaintiff from his deputation allocation." Seetharaman Decl. ¶ 7. The Court thus interprets "compensation" within the Dispute Resolution clause to extend to Plaintiff's compensation from December 2013 to February 2019. Plaintiff does not appear to dispute that his equal pay claims are covered by the definition of "compensation" within the Agreement—nor does he have grounds to do so. Plaintiff's equal pay claims rest on alleged equal pay violations occurring during his "Deputation Term," and thus fall squarely within the Deputation Agreement's definition of "compensation."

In sum, the Court finds that Plaintiff's claims under the NJ CEPA, Title VII, the EPA and the NJLAD all constitute "controversies or claims arising out of or relating to" Plaintiff's "deputation" or "compensation" and are thus covered by the Dispute Resolution clause of the Deputation Agreement. Deputation Agreement § 9.1. The Deputation Agreement's broad language evinces an intent to submit a wide range of claims to arbitration. Even construing the

Deputation Agreement in a light most favorable to the Plaintiff, the Agreement unambiguously manifests an agreement to arbitrate Plaintiff's claims.

### 2. Unconscionability

In the alternative, Plaintiff argues that the Dispute Resolution clause is procedurally and substantively unconscionable, and cannot be enforced. Opp'n at 13. Plaintiff contends that the clause is procedurally unconscionable because of the circumstances under which he signed the Deputation Agreement. Plaintiff also claims that the clause is substantively unconscionable because it requires him to arbitrate in an "unfair" forum—the Nani Palkhivala Arbitration Centre ("NPAC")—and under Indian law. The Court considers these agreements in turn, but finds them unpersuasive.

An agreement to arbitrate that is unconscionable or was the product of economic duress is invalid. *See Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002). Under New York law, on which both parties rely for their arguments on unconscionability, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforc[eable] according to its literal terms."[5] *Gillman v. Chase Manhattan Bank, N.A.,* 534 N.E.2d 824, 828 (N.Y. 1988) (citation omitted). Unconscionability typically includes both procedural and substantive components. *See id.* The procedural component asks whether a party lacked "a meaningful choice" in deciding whether to sign the contract. *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (App. Div.

---

[5] Although the Deputation Agreement provides that it is to be governed by the laws of the Republic of India, Deputation Agreement § 11, the parties' briefs assume that New York law governs the enforceability of the Dispute Resolution clause, *see* Opp'n at 13; Reply at 4. The Court thus assesses Plaintiff's unconscionability claim under New York law. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." (citation omitted)).

1983). "The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was [a] disparity in bargaining power." *Am. Family Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 26 (2d Cir. 2019) (summary order) (citing *Gillman*, 534 N.E.2d at 828). As the Second Circuit has noted, "the FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration." *Ragone*, 595 F.3d at 121. But unequal bargaining power "coupled with high pressure tactics that coerce an employee's acceptance of onerous terms" may be sufficient to demonstrate procedural unconscionability. *Brennan*, 198 F. Supp. 2d at 382; *see also Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ("high pressure tactics" and "deceptive language" can lead to invalidation of adhesive contract). Substantive unconscionability exists when "one or more key terms are unreasonably favorable to one party." *Am. Family Life Assurance*, 778 F. App'x at 27 (internal citation omitted). While procedural unconscionability refers to the contract formation process, "substantive elements of unconscionability appear in the context of the contract per se." *Brennan*, 198 F. Supp. 2d at 382 (quoting *In re Estate of Friedman*, 407 N.Y.S.2d 999, 1008 (App. Div. 1978)).

      a.      **Procedural Unconscionability**

Plaintiff argues that the Dispute Resolution clause is procedurally unconscionable because it was presented to him on a "take-it-or-leave-it basis." Opp'n at 20. Plaintiff alleges that he was presented with the Deputation Agreement shortly before his planned departure to the United States, that he was told the provisions were non-negotiable, that he was asked to sign it upon receipt, and that he was told that "a failure to sign would require that [he] reimburse the

company for the money spent" in preparation for his family's relocation to the United States. Govindharajan Decl. ¶¶ 9–12.

The Court concludes that Plaintiff has not plausibly alleged a procedural unconscionability defense under New York law. As a threshold matter, the Second Circuit has stated that "it is plain" under New York law that a Plaintiff being offered an arbitration agreement on a take it or leave it basis "is not sufficient . . . to render the [arbitration] provision procedurally unconscionable." *Ragone*, 595 F.3d at 122 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)). Although Plaintiff's allegations that Defendants threatened financial repercussions constitute some evidence of "high-pressure[] tactics," *Gillman*, 534 N.E.2d at 828, "the doctrine of unconscionability 'is a flexible one'" and "no one factor is determinative." *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (RWL), 2020 WL 1467182, at *19–20 (S.D.N.Y. Mar. 26, 2020) (citation omitted). Plaintiff does not allege that his education or lack of representation prevented him from understanding the agreement or reading it prior to signing.[6] *See* Govindharajan Decl. ¶¶ 10–13; *see also Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[A] party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them'" (internal citation omitted)). The Deputation Agreement was presented to Plaintiff in a packet containing a "Deputation Letter," Opp'n at 21, in which Defendants urged Plaintiff to "read [the

---

[6] In his Opposition memorandum, Plaintiff argues that before signing the Deputation Agreement, he "asked [Defendants'] Human Resource representative if he could consult with an attorney before signing," but "[t]he Human Resource representative said no." Opp'n at 21. As Defendants rightly note, however, Plaintiff's sworn declaration does not support this characterization, but rather states that Plaintiff "asked if [he was] required to have a lawyer read [the Agreement] before signing," and the representative "told [him] no." Govindharajan Decl. ¶ 10. The facts alleged in Plaintiff's declaration thus do not support a finding of procedural unconscionability. *See Nayal*, 620 F. Supp. 2d at 572 (finding no procedural unconscionability where the plaintiff, inter alia, did not allege that "she was not permitted to review the Agreement with an attorney").

Deputation Agreement] carefully and make certain [to] understand the terms before signing it," Dkt. 20-1, Ex. 6 at 2. Moreover, the signature page of the Deputation Agreement provides:

> I HAVE READ THE FOREGOING DEPUTATION AGREEMENT. I UNDERSTAND IT. I HAVE HAD THE OPPORTUNITY TO REVIEW IT, TO ASK TCS QUESTIONS ABOUT IT AND TO CONSULT AN ATTORNEY ABOUT IT. I SIGN IT KNOWINGLY, WILLINGLY, VOLUNTARILY AND WITHOUT ANY DURESS

Deputation Agreement at 10. In addition, the Dispute Resolution clause is not shielded in "fine print," *Gillman*, 534 N.E.2d at 828, but rather occupies approximately one half of a page and is preceded by a bolded title that would alert a reader to the contents of the clause. *See* Deputation Agreement § 9 ("Dispute Resolution."); *see also Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573 (App. Div. 1998) (finding no procedural unconscionability when an arbitration clause was "in no way 'hidden' or 'tucked away' within a complex document of inordinate length"). Given these facts, the Court concludes that the Dispute Resolution clause is not procedurally unconscionable.

"A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made[.]". *Gillman*, 534 N.E.2d at 828. Accordingly, the lack of procedural unconscionability, alone, would usually be sufficient to defeat Plaintiff's argument regarding unconscionability. However, "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Id.* at 829. For the reasons that follow, the Court also concludes that the Agreement is not substantively unconscionable.

### b. Substantive Unconscionability

Plaintiff argues that the Dispute Resolution clause is substantively unconscionable due to the arbitral forum and rules it mandates. The Second Circuit has recognized that arbitral forum

selection clauses may be unreasonable, and therefore substantively unconscionable, in specific circumstances:

> (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*Jalee Consulting Grp., Inc. v. XenoOne, Inc.*, 908 F. Supp. 2d 387, 393–94 (S.D.N.Y. 2012) (internal citations omitted) (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir.1993)); *see also 5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-CV-4263 (JFB)(AKT), 2013 WL 5328324, at *8 (E.D.N.Y. Sept. 23, 2013).  Plaintiff raises arguments related to all four of these grounds in its opposition memorandum.  *See* Opp'n at 13–23.  Because the Court has already found that Plaintiff failed to plausibly allege that the Deputation Agreement was signed under procedurally unconscionable circumstances, it does not re-consider Plaintiff's arguments regarding fraud and overreaching here.[7]

Plaintiff argues that the enforcement of the arbitral forum selection clause would require him to submit to "the inequitable laws of the Republic of India," which "do not protect whistleblowers in the context of US Visa fraud and the New Jersey CEPA, and . . . would not afford [him] the statutory protection and remedies the laws of the United States would require." Opp'n at 17.  As an initial matter, it is not clear that the referral to arbitration would necessarily preclude Plaintiff from arbitrating his claims under United States law.  Although the Deputation Agreement provides that the "Agreement shall be governed by the laws of the Republic of

---

[7] Plaintiff also argues that Defendants engaged in fraudulent concealment by submitting doctored organizational charts to USCIS for Plaintiff's visa application.  Opp'n at 23.  However, because this argument does not relate to alleged fraud in the execution of the Dispute Resolution clause, the Court does not consider it here.

14

India," Deputation Agreement § 11, the Dispute Resolution clause itself does not mandate that arbitrations occur under Indian law, *id.* § 9. Instead, the Dispute Resolution clause states that the "arbitration shall be conducted in accordance with the rules of arbitration of the [NPAC]." *Id.* The NPAC rules leave open the possibility that Plaintiff's claims would be analyzed under U.S. law. *See* NPAC Rules, Dkt. 19-1, Ex. 4 at R. 38(a) ("In international arbitrations, the Arbitral Tribunal shall apply the law designated by the parties as applicable to the *substance* of the dispute." (emphasis added)).

Moreover, the Second Circuit has specified that the inquiry relating to an arbitral forum selection clause is whether a party "will be deprived of *any* remedy." *Roby*, 996 F.2d at 1363. "[I]t is not enough that the foreign law or procedure merely be different or less favorable than that of the United States." *Id.* Plaintiff has not plausibly alleged that he would be wholly deprived of "any" remedy under Indian law or the NPAC rules. Indeed, the Second Circuit and courts in this district have upheld arbitration clauses requiring arbitration in India under foreign arbitration procedures. *See, e.g., Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,* 189 F.3d 289, 297 (2d Cir. 1999) (upholding an arbitration clause "pursuant to the rules set forth by Texprocil in Bombay, India"); *Dynamic Int'l Airways, LLC. v. Air India Ltd.,* No. 15-CV-7054 (PKC), 2016 WL 3748477, at *1–*2 (S.D.N.Y. July 8, 2016) (granting defendant's motion to compel arbitration in India by "a designated Authority determined by the [Indian] Ministry of Civil Aviation"). Furthermore, the Court does not find that the designation of Indian law is "unreasonably favorable" to Defendants, as the terms of the clause, including the arbitral forum, apply equally to Plaintiff and Defendants. *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) ("When both an employer and its employees are bound to an

15

agreement to arbitrate, when the terms of the agreement are equally applicable to both parties . . . the arbitration agreement is not unreasonably favorable to the employer.").

Plaintiff also contends that the NPAC rules are unreasonably favorable to the Defendants because TCS's former CFO, Mr. S. Mahalingam, serves on its Board of Directors. Opp'n at 18. Plaintiff argues that Mr. S. Mahalingam may exercise influence adverse to Plaintiff by selecting a biased arbitrator or changing the rules that govern the arbitration. *Id*. at 18–19. The NPAC rules, however, specify that where the NPAC is named as the appointing authority in an agreement, as it is here, "the Centre shall appoint an Arbitrator from its panel *mutually acceptable* to the parties." NPAC Rules at R. 9(B) (emphasis added). The NPAC rules allow a party to challenge the appointment of an arbitrator "for alleged lack of independence or otherwise," and the NPAC's Governing Council for Arbitration may "direct the Centre not to hold the first sitting of the Arbitral Tribunal or further sittings till such objection is disposed of." *Id.* at R. 12(c); 12(f). Therefore, even if Mr. S. Mahalingam were to influence the choice of arbitrator, Plaintiff would be able to seek recourse under the NPAC rules. Further, although the Board of Directors retain the authority to modify the NPAC rules, any changes "shall . . . not affect existing proceedings unless specifically made applicable." *Id.* at R. 56. Moreover, any such changes must be made by the Board of Directors "in consultation with the Governing Council for Arbitration." *Id*. Accordingly, the Court concludes that the NPAC rules provide sufficient checks on Mr. S. Mahalingam's authority to prevent him from exercising undue influence over the arbitration.

Finally, Plaintiff alleges that the forum selection clause contravenes "United States, New York State, and New Jersey State public policy which frowns upon a clear one-sided conflicted arbitration proceeding." Opp'n at 18. For the reasons stated above, however, the agreement does not create a "clear one-sided conflicted arbitration proceeding." The Court thus concludes

16

that the Dispute Resolution clause is neither procedurally nor substantively unconscionable, a finding consistent with the "national policy favoring arbitration" articulated in the FAA. *Buckeye Check Cashing*, 546 U.S. at 443.

### B. Plaintiff Has Failed or Refused to Arbitrate

Upon a finding that there is a valid obligation to arbitrate, the remaining question becomes "whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL*, 390 F.3d at 198. A "party has refused to arbitrate if it 'commences litigation or is ordered to arbitrate th[e] dispute . . . and fails to do so.'" *Id*. (internal citation omitted). By initiating this action, Plaintiff has refused to arbitrate.

Accordingly, the Court concludes that Plaintiff has an obligation to bring his NJ CEPA, Title VII, EPA and NJLAD claims against Defendants in arbitration. Defendants' motion to compel arbitration on those claims is thus granted.

## II. The Motion to Dismiss Count VII

Defendants also seek dismissal of Count VII of Plaintiff's complaint, which alleges immigration fraud in violation of 18 U.S.C. § 1546, pursuant to Rule 12 of the Federal Rules of Civil Procedure.[8] Defendants rightly argue that 18 U.S.C. § 1546 is a criminal statute with no private right of action, rendering Plaintiff's claim invalid. Mot. at 11; *see, e.g., Jones v. Gen. Elec. Co.*, No. CV ELH-19-196, 2019 WL 6918490, at *9 (D. Md. Dec. 19, 2019); *Graham v. Rawley*, No. CV 14-6743, 2016 WL 7477756, at *4 (D.N.J. Dec. 29, 2016); *Gonzales v. Caremore Health Plan, Inc.*, No. CV 15-1499 ODW (FFMx), 2015 WL 6394467, at *2 (C.D. Cal. Oct. 22, 2015). Plaintiff has not cited any cases suggesting otherwise. The Supreme Court

---

[8] Although Defendants bring their motion under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Mot. at 1, the Second Circuit has indicated that Rule 12(b)(6) is appropriate when seeking to dismiss a claim with no private right of action, *see Fair v. Verizon Commc'ns Inc.*, 621 F. App'x 52, 53 (2d Cir. 2015) (summary order).

has cautioned against reading an implied private cause of action into a statute without a clear statement from Congress. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Moreover, with respect to criminal statutes, "[a]s a general matter, [the Second Circuit has] long recognized that crimes are prosecuted by the government, not by private parties." *Hill v. Didio*, 191 F. App'x 13, 14–15 (2d Cir. 2006). As 18 U.S.C. § 1546 is silent with regard to enforcement authority, there is no clear indication in the text of the statute that Congress intended to create a private right of action. Nor has Plaintiff pointed to any other evidence of congressional intent to create a private right of action.

Plaintiff's visa fraud claim pursuant to 18 U.S.C. § 1546 must therefore be dismissed.

## III. The Court Will Provide Plaintiff with an Opportunity to Seek a Stay

Defendants request that "if Plaintiff does not request that this matter be stayed pending arbitration, . . . Counts I through VI be dismissed." Mot. at 10–11. As Plaintiff has not yet stated his position on a stay, the Court will provide Plaintiff ten days to do so. If Plaintiff does not seek a stay, the Court will dismiss the action.

The FAA requires a district court, "on application of one of the parties," to stay an action after determining that "any issue" in the action is "referable to arbitration." 9 U.S.C. § 3. The Second Circuit has explained that, although it "recognize[s] the impetus for a rule permitting dismissal . . . the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *see also* 9 U.S.C. § 3 ("[T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]"). When "a stay is requested, the Court must grant the stay[,]" but "when a stay is not requested, the district court has discretion in

determining whether to stay or dismiss the case pending arbitration." *Worthington v. JetSmarter, Inc.*, No. 18-CV-12113 (KPF), 2019 WL 4933635, at *8 (S.D.N.Y. Oct. 7, 2019).  "Since *Katz*, most of the district courts in [the Second] Circuit have hesitated to dismiss arbitrable claims, even where neither side has expressly requested a stay." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 186 n.15 (S.D.N.Y. 2018) (collecting cases).

Here, all remaining claims against Defendants are subject to arbitration, and a stay is not mandatory.  *See Benzemann v. Citibank N.A.,* 622 F. App'x 16, 18 (2d Cir. 2015).  Nonetheless, the Court recognizes that a stay may be appropriate to allow the parties "to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation should judicial participation . . . prove necessary." *China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd.*, 182 F. Supp. 3d 42, 53 (S.D.N.Y. 2016) (internal citation omitted).  The Court will thus delay dismissal of this case for ten (10) days to give Plaintiff the opportunity to seek a stay.

## CONCLUSION

For the foregoing reasons, the Court hereby compels arbitration of Plaintiff's NJ CEPA, Title VII, EPA, and NJLAD claims and dismisses Plaintiff's 18 U.S.C. § 1546 claim.  No later than July 26, 2020, Plaintiff shall notify the Court if he seeks a stay of this action pending arbitration.

SO ORDERED.

Dated:　July 16, 2020
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　Ronnie Abrams
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge